UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 5:23-cv-00081-GFVT |
| v. | ) ) | **MEMRANDUM OPINION** |
| LOGAN R. WESTMORELAND and JOSEPH E. ZUPANCIC, | ) ) ) | **&** **ORDER** |
| Defendants. | ) ) ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

This matter is before the Court on Defendant Joseph Zupancic's Motion to Dismiss.  [R. 5.]  For the reasons that follow, Mr. Zupancic's motion will be **GRANTED**.

**I**

This action is ancillary to a case currently pending in Fayette Circuit Court.  The relevant facts are as follows.  In the summer of 2020, Joseph Zupancic was enjoying a night out with some friends in downtown Lexington.  [*See* R. 1; R. 5-6.]  At one point during that night, Mr. Zupancic became involved in an altercation with a group of young men, which included Logan Westmoreland.  [*See* R. 1; R. 5-6.]  The altercation resulted in Mr. Zupancic suffering serious bodily injuries at the hands of Mr. Westmoreland.  [*See* R. 1; R. 5-6.]  Mr. Westmoreland was arrested and charged with assault in the second degree, but maintained that he was acting in self-defense.  [*See* R. 1; R. 5-6.]  Eventually, Mr. Westmoreland pled guilty to assault in the fourth degree.  [*See* R. 1; R. 5-6.]

A year later, in July 2021, Mr. Zupancic filed a state civil action against Mr. Westmoreland and one other defendant.  [R. 1.]  Mr. Zupancic's state court action seeks

compensatory and punitive damages for his bodily injuries suffered in 2020. [R. 1-2.] At the time of the assault, State Farm insured Mr. Westmoreland under a renter's policy, which provides liability coverage for bodily injury claims, subject of course to terms and conditions. [R. 1.] Based on this policy, State Farm has thus far provided a defense for Mr. Westmoreland in the ancillary state civil action against him. *Id*. Now, however, State Farm questions whether it has a duty to defend and indemnify Mr. Westmoreland for the allegations against him. *Id*. Accordingly, State Farm filed this current action in federal court seeking a declaratory judgment and a declaration of rights as to its duties to defend and indemnify Mr. Westmoreland in his defense against Mr. Zupancic's civil action. *Id*.

Mr. Zupancic has moved to dismiss State Farm's declaratory judgment action, evincing doubt that this Court should exercise jurisdiction over this matter. [R. 5.] State Farm has responded and argues that this Court should exercise jurisdiction. [R. 6.] The Court turns now to the question of whether exercising it declaratory judgment jurisdiction is appropriate.

**II**

Because State Farm requests a declaratory judgment, the Court must determine whether granting a declaration is appropriate. Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). Accordingly, jurisdiction under the act is discretionary. *See Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942) (exercise of jurisdiction under the Declaratory Judgment Act is not mandatory); *see also Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004). As the Supreme Court puts it, "district courts possess discretion

in determining whether and when to entertain an action under the Declaratory Judgment Act,

even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v.*

*Seven Falls Co.*, 515 U.S. 277, 282, (1995).

And as then-district Judge Thapar explained, "[d]istrict courts must exercise this

discretion cautiously." *Grange Mut. Ins. Co. v. Safeco Ins. Co. of America*, 565 F. Supp. 2d 779,

785 (E.D. Ky. 2008). "We are, after all, courts of limited jurisdiction. And, if our decision to

keep a matter does nothing more than cause the parties to engage in litigation on two fronts, we

are neither furthering the interests of justice nor preserving parties' resources." *Id.* (citing

*Panhandle E. Pipe Line Co. v. Mich. Consol. Gas Co.*, 177 F.2d 942, 944 (6th Cir. 1949)).

Indeed, the Sixth Circuit has "cautioned district courts not to jump into the middle of ongoing

litigation" because "'declaratory judgment actions seeking an advance opinion of indemnity

issues are seldom helpful in resolving an ongoing action in another court.'" *Id.* (quoting

*Bituminous Cas. Corp.*, 373 F.3d at 812.

In determining whether to exercise its jurisdiction under the Declaratory Judgment Act, a

district court in the Sixth Circuit considers the following five factors:

> (1) whether the declaratory action would settle the controversy; (2) whether the
> declaratory action would serve a useful purpose in clarifying the legal relations in
> issue; (3) whether the declaratory remedy is being used merely for the purpose of
> "procedural fencing" or "to provide an arena for a race for res judicata;" (4)
> whether the use of a declaratory action would increase the friction between our
> federal and state courts and improperly encroach on state jurisdiction; and (5)
> whether there is an alternative remedy which is better or more effective.

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (citations omitted). And while

these factors are useful benchmarks, the ultimate decision about whether to accept jurisdiction is

left to the "unique and substantial" discretion of the Court. *Id.* at 563 (quoting *Wilton*, 515 U.S.

at 286).

**A**

To begin, the Court considers the first *Scottsdale Ins. Co. v. Flowers* factor, which asks whether declaratory action would settle the controversy.  With respect to this factor "in the context of an insurance company's suit to determine its policy liability," the *Flowers* court noted a split in precedent.  *Id.* at 555.  "One set of cases has concluded that a declaratory relief action can settle the insurance coverage controversy not being addressed in state court, even though it will not help resolve the underlying state court action."  *Id.*  "A different group of cases, however, has found that, while such declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the parties which is ongoing in state court."  *Id*.

The current action falls somewhere in between the two categories of cases.  State Farm argues that "a duty to defend is a question of law based on an examination of the Complaint allegations and the policy."  [R. 6 at 13.]  State Farm also asserts that indemnity "can also be a question of law if there are no material facts in dispute."  *Id*.  The chief controversy here involves the scope of the insurance policy.  Thus, because State Farm is not a party in the state court tort action, the Court could presumably settle the insurance coverage controversy with little to no interference to the state court suit.  This fact would tend to support the exercise of jurisdiction.

But on the other hand, the civil damages action is still pending in state court.  Thus, a declaratory judgment by this Court would not settle the ultimate underlying controversy regarding whether Mr. Zupancic is entitled to damages.  And while State Farm is correct that indemnity issues may be resolved if material facts are not in dispute (*see Nautilus Ins. Co. v. KC Diamond Sports Studio, LLC*, NO. 21-63-DLB, 2022 U.S. Dist. LEXIS 130310 at *17 (E.D. Ky. July 22, 2022)), generally the duty to indemnify in Kentucky "is a question of law to be

determined after the facts have been determined by a jury." *Id.* (internal citations and quotations omitted). The Court is uncertain that material facts relating to the insurance policy coverage of Mr. Westmoreland do not exist, despite State Farm's assertion to the contrary. For that reason, the Court is hesitant to engage in a fact-finding expedition relating to Mr. Westmoreland's criminal guilty plea and his declarations of self-defense, even if it would settle this insurance coverage dispute. This fact, along with the fact that a declaratory judgment by this Court would not settle the ultimate underlying controversy pending in state court, weighs against the exercise of jurisdiction. Thus, the first *Flowers* factor is, at best, neutral.

The second *Flowers* factor, which asks whether declaratory action would serve a useful purpose in clarifying the legal relations in issue, "is closely related to the first factor and is often considered in connection with it. Indeed, it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Flowers*, 513 F.3d at 557 (citations omitted). Much like in the first factor, the insurance coverage question itself could seemingly be clarified through a federal declaratory judgment suit. But the Court cannot see that a federal declaratory judgment action would be more useful in clarifying the legal relations at issue than a state declaratory action would be. The Court finds that the second factor, like the first factor, is neutral.

The third *Flowers* factor considers "whether the use of the declaratory judgment action is motivated by 'procedural fencing' or likely to create a race for *res judicata*." *Id.* at 558. It "is meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a "natural plaintiff" and who seem to have done so for the purpose of acquiring a favorable forum.'" *Id.* (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)). As State Farm points out, the Court should be "reluctant to impute an

improper motive to a plaintiff where there is no evidence of such in the record." [R. 6 at 17 (citing *Flowers*, 513 F.3d at 558).] *But see United States Fire Ins. Co. v. Albex Aluminum, Inc.*, 161 Fed. Appx. 562, 565 (6th Cir. 2006) (explaining that the district court did not abuse its discretion in finding that factor three weighed against exercising jurisdiction because the indemnification issue would "ineluctably" be brought before the state court and it was apparent that the plaintiff insurance company was trying to secure favorable ruling in federal court rather than take the risk that it would not fare as well in state court). "A district court should not deny jurisdiction to a plaintiff who has not done any more than choose the jurisdiction of federal rather than state court, a choice given by Congress." *Flowers*, 513 F.3d at 558 (citation and internal quotations omitted).

Mr. Zupancic argues that this third factor weighs against exercising jurisdiction because State Farm has thus far defended Mr. Westmoreland in the ancillary state court action, and that State Farm filed this action late in the discovery process "when its policy would now come into play with regarding [sic] settlement negotiations." [R. 5 at 6.] State Farm repudiates any assertion of improper motive, noting that "it should be given 'the benefit of the doubt that no improper motive fueled the filing of th[e] action.'" [R. 6 at 18 (quoting *Bituminous Cas. Corp.*, 373 F.3d at 814).] Although it is likely the case that State Farm prefers its chances of a favorable declaratory judgment in federal court as opposed to in state court, this fact is not evidence of improper motive. Mr. Zupancic's case against Mr. Westmoreland had been, as both parties aver, pending in state court for quite a while before State Farm brought this action in federal court. There is absent, then, any evidence of a race for *res judicata*. Thus, the Court finds that the third factor weighs in favor of exercising its jurisdiction.

The fourth *Flowers* factor requires the Court to consider whether the declaratory action

would increase the friction between federal and state courts.  The Court finds this factor particularly compelling.  The Supreme Court cautions that "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in gratuitous interference, if it permitted the federal declaratory action to proceed."  *Wilton*, 515 U.S. at 283 (internal quotations and citation omitted).  Three sub-factors are relevant when considering this fourth friction-avoiding factor:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Flowers*, 513 F.3d at 560.

The first sub-factor "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action."  *Id.* Sometimes, a declaration of insurance coverage can be resolved as a matter of law, and factual findings by a state court are unnecessary to that determination.  In such cases, federal jurisdiction may be suitable.  *See id.*  If the issues raised in the federal case require making factual findings that may conflict with similar state court findings, however, "exercise of jurisdiction would be inappropriate."  *Id.*  The Court finds the force of this first sub-factor to be neutral.  State Farm argues that this federal action is not dependent on the factual determinations of the state court, and that "the legal issues relevant to the coverage determination are distinct from the factual and legal issues as to liability and damages involved in the state court tort action."  [R. 6 at 19.]  Mr. Zupancic evinces that the issue of insurance coverage does in fact depend on further factual determinations currently pending before the state court.  [R. 5 at 7.]  As the Court explained

above when weighing the first *Flowers* factor, it is hesitant to unnecessarily wade into the record or to take State Farm at its word that no material facts are in dispute with regard to determining insurance coverage.  This hesitation is further reinforced by the importance of factual determinations on the indemnity issue.  State Farm brought this case pursuant to this Court's diversity jurisdiction, and neither federal common law nor federal statutory law applies to the substantive issues of the case.  In this situation, Kentucky courts may be best situated to enforce both Kentucky's law and public policy preferences, and to evaluate any factual issues accordingly.

The second sub-factor "focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Flowers*, 513 F.3d at 560.  State courts are generally better suited to resolve novel questions of state law.  *Id*.  But "when an insurance company is not a party to the state court action, and neither the scope of the insurance coverage nor the obligation to defend [is] before the state court . . . a decision by the district court on these issues would not offend principles of comity." *Id*. (citation omitted).  Here, the Court doubts that it is better positioned than the state court to resolve the coverage issue.  "While the Court *could* hear the case, there is no reason that the Court *must* hear the case.  Comity is key for effective federalism, and where the Court is not in a superior position to resolve the lawsuit, it weighs this sub-factor in opposition of jurisdiction." *DeBord v. Great W. Cas. Co*., Civil No. 6:15-cv-00119-GFVT, 2015 U.S. Dist. LEXIS 145188 at *14 (E.D. Ky. Oct. 27, 2015).

With respect to the third sub-factor, the Sixth Circuit has held that

[i]ssues of insurance contract interpretation are questions of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve. The states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation for such regulation.  However, not all issues of insurance contract interpretation implicate such fundamental state policies that federal courts are unfit to consider them.

*Id*. at 561 (internal citations and quotation marks omitted).  The third sub-factor almost certainly weighs in favor of declining jurisdiction.  Because two of the three sub-factors weigh towards declining jurisdiction rather than exercising it, and the other sub-factor is neutral, the fourth *Flowers* factor supports declining jurisdiction.

The fifth and final *Flowers* factor requires the Court to consider whether there is an alternative remedy that is better or more effective than a federal court ruling.  *See id*. at 554.  Here, State Farm possesses access to alternative remedies.  First, State Farm could seek intervention in the state court action.  Although this course of action might require bifurcation of the underlying liability claims from the insurance coverage claims, bifurcation and a stay of the insurance coverage issues are only necessary if Mr. Westmoreland elects to forego hiring personal counsel.[1]  Whether he might choose to do so is too speculative for the Court to consider.  State Farm can also simply file a declaratory judgment action in state court.  Or State Farm could file an indemnity action in state court after the underlying issues of liability have been resolved.  Although these may not be State Farm's preferred remedies, each remedial option is viable and capable of being sought.  It may too be the case that the state forum is superior to the federal forum in some regards.

In conclusion, the majority of the relevant considerations oppose, rather than support, the Court's jurisdiction.  The third *Flowers* factor, which "usually does not weigh heavily in the analysis," is the only one that arguably supports jurisdiction.  *See United Specialty Ins. Co. v.*

---

[1] This prospective and partially speculative course of action is based on State Farm's interpretation of Ethics Opinion KBA-E452, which was issued September 18, 2020, by the Kentucky Bar Association.  The subject of the formal ethics opinion was "Ethical Duties of Lawyers Defending Insured Clients Without Separate Retained Counsel for the Client Where Insurance Carriers Have Reserved Rights to Coverage Defenses and Then Intervene to Determine Those Rights in the Same Litigation or in a Separately Filed Litigation."  This Court, in no way, intends for this Memorandum Order and Opinion to serve as an interpretation of the KBA's ethics opinion.  Such is better left to the state courts.

*Cole's Place, Inc.*, 936 F.3d 386, 399 (6th Cir. 2019). The first two factors are neutral at best, and more likely weigh against the discretionary exercise of jurisdiction. And the fourth and fifth factors, because of the Court's respect for comity and the avoidance of friction between the federal and state judiciaries, weigh against the exercise of jurisdiction.

### III

While it may be possible for the Court to hear this case, the exercise of jurisdiction under the Declaratory Judgment Act is not mandatory. *Brillhart*, 316 U.S. at 494; *Bituminous*, 373 F.3d at 812. Indeed, the Court possesses "unique and substantial" discretion. *Flowers*, 513 F.3d at 563. For the reasons explained above, the Court declines to exercise its Declaratory Judgment Act jurisdiction. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant Joseph Zupancic's Motion to Dismiss [**R. 5**] is **GRANTED**;

2. All other pending motions [**R. 8**] are **DENIED AS MOOT**; and

3. This matter is **STRICKEN** from the Court's active docket.

This the 21st day of February 2024.

Gregory F. Van Tatenhove
United States District Judge