UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 5:23-cv-00081-GFVT |
| v. | ) ) | **MEMORANDUM OPINION** |
| LOGAN R. WESTMORELAND and JOSEPH E. ZUPANCIC, | ) ) ) ) | **&** **ORDER** |
| Defendants. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Plaintiff State Farm Fire and Casualty Company's Motion to Alter Judgment. [R. 14.] For the reasons that follow, State Farm's motion will be **GRANTED**.

**I**

This action is ancillary to a case currently pending in Fayette Circuit Court. The relevant facts are as follows. In the summer of 2020, Joseph Zupancic was enjoying a night out with some friends in downtown Lexington. [*See* R. 1; R. 5-6.] At one point during that night, Mr. Zupancic became involved in an altercation with a group of young men, which included Logan Westmoreland. [*See* R. 1; R. 5-6.] The altercation resulted in Mr. Zupancic suffering serious bodily injuries at the hands of Mr. Westmoreland. [*See* R. 1; R. 5-6.] Mr. Westmoreland was arrested and charged with assault in the second degree, but maintained that he was acting in self-defense. [*See* R. 1; R. 5-6.] Eventually, Mr. Westmoreland pled guilty to assault in the fourth degree. [*See* R. 1; R. 5-6.]

A year later, in July 2021, Mr. Zupancic filed a state civil action against Mr.

Westmoreland and one other defendant. [R. 1.] Mr. Zupancic's state court action seeks compensatory and punitive damages for his bodily injuries suffered in 2020. [R. 1-2.] At the time of the assault, State Farm insured Mr. Westmoreland under a renter's policy, which provides liability coverage for bodily injury claims, subject of course to terms and conditions. [R. 1.] Based on this policy, State Farm has thus far provided a defense for Mr. Westmoreland in the ancillary state civil action against him. *Id*. Now, however, State Farm questions whether it has a duty to defend and indemnify Mr. Westmoreland for the allegations against him. *Id*. Accordingly, State Farm filed this current action in federal court seeking a declaratory judgment and a declaration of rights as to its duties to defend and indemnify Mr. Westmoreland in his defense against Mr. Zupancic's civil action. *Id*.

Mr. Zupancic moved to dismiss State Farm's declaratory judgment action, evincing doubt that this Court should exercise jurisdiction over this matter. [R. 5.] Ultimately the Court agreed with Mr. Zupancic, determining that exercising jurisdiction under the Declaratory Judgment Act would be inappropriate after assessing the five factors laid out in *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008). [R. 13.] The Court determined that complicated and unresolved factual issues underlie this case, leading several of the factors to weigh against exercising jurisdiction. *Id*. Now State Farm moves to alter the Court's prior judgment, contending that the Court made clear errors of law when it assessed the various factors. [R. 14.] In State Farm's view, even if there are some complicated factual issues underlying the altercation between Zupancic and Westmoreland, those issues are not relevant to the policy exclusions State Farm wishes the Court to consider. *Id*. at 3-8. The Court therefore misapplied the *Flowers* factors based on the facts of this case. *Id*. at 8-16.

**II**

Federal Rule of Civil Procedure 59(e) does provide a mechanism for civil litigants to move to alter or amend a Judgment, but a court may grant relief under Rule 59(e) only to (1) correct a clear error of law; (2) account for newly discovered evidence; (3) accommodate an intervening change in controlling law; or (4) prevent a manifest injustice. *Am. C.L. Union of Ky. v. McCreary Cnty.*, 607 F.3d 439, 450 (6th Cir. 2010); *Besser v. Sepanek*, 478 F. App'x 1001, 1001-02 (6th Cir. 2012). A motion for reconsideration under Rule 59(e) is a rare remedy. A party cannot use Rule 59(e) to reargue his case because he disagrees with the Court's result, and a Rule 59(e) motion should not be based on the same arguments previously asserted and considered by the Court. *See Mich. Flyer, LLC v. Wayne Cnty. Airport Auth.*, 860 F.3d 425, 431 (6th Cir. 2017). Nonetheless, the Court thinks this "rare remedy" is appropriate here.

As an initial matter, State Farm does not merely repeat the arguments it made in its response to Zupancic's Motion to Dismiss. [R. 6.] Instead, it focuses its arguments on the factors it believes the Court erred in assessing and provides the Court with a greater sense of the relevant factual issues. In so doing, State Farm focuses the Court's eye on the relatively straightforward facts specifically related to State Farm's coverage of Westmoreland rather than the more confusing general facts of Westmoreland's conflict with Zupancic. While some overlap is inevitable, State Farm is not relitigating the arguments it made previously.

It is this new attention drawn to the relevant facts that persuades the Court that it erred in its initial decision. [R. 13.] In its decision the Court noted that it was "uncertain that material facts relating to the insurance policy coverage of Mr. Westmoreland do not exist." *Id*. at 5. This led the Court to be "hesitant to engage in a fact-finding expedition" and "hesitant to unnecessarily wade into the record or to take State Farm at its word that no material facts are in

3

dispute with regard to determining insurance coverage." *Id*. at 5, 8. In essence the Court was worried that by exercising jurisdiction in this Declaratory Judgment action it would ultimately be meddling in an ongoing dispute with significant unresolved factual issues. State Farm's motion makes clear that these concerns were misplaced.

### A

In its Motion to Alter Judgment, State Farm emphasizes that this declaratory judgment action based on the renter's policy held by Westmoreland is "focused on two narrow issues." [R. 14 at 3.] These issues are "whether State Farm's policy extends liability coverage for the claims against Westmoreland under the policy's insuring agreement which only provides liability coverage for claims for bodily injury caused by an 'occurrence' which the policy defines to mean 'an accident'" and, assuming the policy extends coverage, "whether the criminal acts exclusion then takes away and/or precludes liability coverage." *Id*.

Considering the first issue, State Farm's renter's policy grants personal liability coverage for a claim or suit "brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence[.]" The policy defines "occurrence" to mean "an accident, including exposure to conditions, which first results in . . . bodily injury . . . during the policy period." [R. 14-1 at 15, 30.] Kentucky law makes clear that the term "accident" is not ambiguous and should be accorded its plain meaning. *Cincinnati Ins. Co. v. Motorist Mut. Ins. Co.*, 306 S.W.3d 69, 74 (Ky. 2010). Delving into the "doctrine of fortuity" inherent to the plain meaning of "accident," the Kentucky Supreme Court identified two core aspects of fortuity: intent and control. *Id*. The *Cincinnati Insurance* opinion explains that a "loss was fortuitous if it was 'not intended.'" *Id*. (quoting *Aetna Cas. & Sur. Co. v. Commonwealth,* 179 S.W.3d 830, 836 (Ky. 2005)). As the Kentucky Supreme Court later

distilled, "[i]f the insured did not intend the event or result to occur, and the event or result that occurred was a chance event beyond the control of the insured, then…coverage covering accidents will apply to the benefit of the insured." *Martin/Elias Properties, LLC v. Acuity*, 544 S.W.3d 639, 643 (Ky. 2018).

      Applying the above reasoning to the policy at issue in this case makes clear that the only relevant issue in determining coverage is whether the incident between Westmoreland and Zupancic was an accident or if it was within the intent and control of the insured. In this case, without deciding whether Westmoreland's actions were truly in self-defense, the Court could seemingly determine that they were in fact volitional, and well within both Westmoreland's intent and his control. This is because Westmoreland's sworn deposition testimony is that he intended to strike Zupancic. [R. 14-2 at 2-4.] The issue of self-defense, even if important to the underlying tort action, is therefore seemingly unimportant to determining the issue of coverage. Other courts considering this very issue have repeatedly reached the same conclusion. *See State Farm Fire & Cas. Co. v. Taylor*, 2018 WL 3594973 (E.D. Ky. July 26, 2018); *see also Coleman v. State Farm Fire & Cas.*, 2016 WL 4256903 (Ky. Ct. App. Aug. 12, 2016) (insured acting in self-defense did not preclude finding of no liability coverage based on intentional act of insured). In *Taylor* the Court considered a similar claim of a fight involving self-defense and explained that "it is 'clear from a policy interpretation and common sense viewpoint' that, usually, 'a fight is not an accident.'" *Taylor*, 2018 WL 3594973 at *9 (quoting *Liberty Mut. Fire Ins. Co. v. Harris*, WL 1157745 at * 4 (W.D. Ky. Mar. 28, 2011), *aff'd*, 513 F. App'x 563 (6th Cir. 2013)). This Court agrees.

      Turning to the second issue, State Farm contends that the criminal acts exclusion contained within the renter's policy at issue would take away liability coverage as a matter of

5

law. [R. 14 at 6.] This exclusion provides that liability and medical payments coverage does not apply to "bodily injury or property damage that: (1) was a result of a: (a) willful and malicious; or (b) criminal; act or omission of the insured." [R. 14-1 at 31.] Considering a denial of coverage based on a similar criminal acts exclusion, the Sixth Circuit stated that "[a] plain and ordinary reading of these provisions indicates that, if an insured commits a criminal act, then he will be excluded from coverage." *Atl. Specialty Ins. Co. v. Stanley*, 2019 WL 4440402 at * 3 (6th Cir. Aug. 23, 2019). The *Stanley* Court noted that these provisions are "ambiguous only when 'applied to particular acts that [are] not quintessentially criminal.'" *Id*. (citing *Auto Club. Prop.-Cas. Ins. Co. v. B.T. ex rel. Thomas*, 596 F. App'x 409, 413 (6th Cir. 2015)).

Examining the facts of this case, Westmoreland pled guilty to a lesser charge of assault in the fourth degree. [R. 14-3 at 1.] In his deposition Westmoreland admitted that he understood that pleading guilty meant that he was admitting to intentionally assaulting Zupancic. [R. 6-2 at 13.] It is well settled under Kentucky law that felonies and misdemeanors generally fall within criminal acts exclusions. *Eberle v. Nationwide Mut. Ins. Co.*, 2016 WL 2609311 at *4 (Ky. Ct. App. May 6, 2016) (citing *Healthwise of Kentucky, Ltd. v. Anglin,* 956 S.W.2d 213, 216 (Ky. 1997). In *Eberle* the policy at issue contained language which "rendered the actual fact of a prior conviction a nullity," thus requiring the Court to "determine whether the record supports … that all necessary elements of the relevant criminal statute have already been admitted or judicially established beyond any possible doubt." *Eberle*, 2016 WL 2609311 at *6. The *Eberle* Court noted, however, that this would be an easy question had the defendant "actually been convicted by a jury of the substantive charge or pled guilty to it as part of a straight plea." *Id*. The criminal docket, hearing transcript, and Westmoreland's deposition make clear that his was a straight plea, unlike the *Alford* plea that complicated the issue in *Eberle*.

6

In combination then, the facts of this case are markedly less complicated than they initially appeared. While there is an underlying dispute as to self-defense and Westmoreland's civil liability, those factual issues do not weigh in on the question of State Farm's responsibility to provide coverage that is central to this action. With that in mind, the Court will now reassess its determination of the *Flowers* factors with the clarified facts discussed above.

**B**

State Farm asks the Court to reconsider *Flowers* factors one, two, and four. [R. 14 at 8-16.] These are: (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; and (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction. [R. 13 at 3.] For the fourth factor, the Sixth Circuit directs courts to consider three sub-factors: (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action. *Id*. at 7. State Farm challenges the Court's reading of the first two of these sub-factors and thus its conclusion on the fourth factor overall. [R. 14 at 14-15.]

**1**

In its consideration of the first *Flowers* factor, the Court was primarily concerned with indeterminate facts that would likely be clarified later in the underlying state tort action. [R. 13 at 4-5.] The Court noted however that, while any decision it rendered would not resolve the underlying tort action, it could "settle the insurance coverage controversy with little to no

7

interference to the state court suit," a fact that supported jurisdiction. *Id*. at 4. This combination of facts led the Court to conclude that "the first *Flowers* factor is, at best, neutral." *Id*. at 5. As State Farm now points out, the Court's concerns about factual complications were misplaced.

In this case, the sole live dispute is State Farm's duty to defend and indemnify under Westmoreland's renter's policy. This dispute does not depend on a "fact-finding expedition relating to Mr. Westmoreland's criminal guilty plea and his declarations of self-defense" because those factual disputes are ultimately not relevant to the issue of insurance coverage. Self-defense or not, Westmoreland's volitional actions likely ran afoul of the criminal acts exclusion contained within his renter's policy. Nor would they seem to be an accident as required for coverage in the first instance. Considering a similar issue of coverage involving injuries from a shooting at a restaurant, the court in *Penn-Star Ins. Co. v. Aral, Inc.*, 2024 WL 992480 at *1-2 (E.D. Ky. Mar. 7, 2024), rejected a plaintiff's vague assertions that exercising jurisdiction "would require a 'comprehensive examination' of the underlying facts." Thus, the *Penn-Star* court found that the case was firmly within a line of cases that directs the district court to focus on the controversy between the insurer and the insured. *Id*. at *2 (citing *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 760 (6th Cir. 2014)).

Resolving the issue of insurance coverage can, and in this case does, favor exercising jurisdiction under the first *Flowers* factor. *See United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 397-98 (6th Cir. 2019) (district court did not abuse its discretion in concluding that a declaratory judgment would settle the controversy by resolving the issue of indemnity) (citing *Hoey*, 773 F.3d at 760-61). Indeed, this conclusion is made even stronger because here, unlike *Cole's Place*, all relevant state parties interested in coverage have been joined. With its clarified view of the relevant facts, the Court finds that the previously neutral first *Flowers* factor now

8

weighs in favor of exercising jurisdiction.

Because "it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue," courts frequently consider the second *Flowers* factor hand-in-hand with the first. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008); *see also United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 397 (6th Cir. 2019). In assessing the second *Flowers* factor, "whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue," the Court noted that it could not "see that a federal declaratory judgment action would be more useful in clarifying the legal relations at issue than a state declaratory action would be." [R. 13 at 5.] The Court therefore concluded the second factor was neutral. *Id*. As State Farm points out, it need not be the case that a federal declaratory judgment be *more* useful than a state judgment, as long as it is still useful in clarifying the parties' legal relations. [R. 14 at 13-14.] Now that it is clear the underlying facts will not be implicated in a decision by this Court, a decision would certainly clarify the legal relationship between State Farm and Westmoreland its insured. Like the first factor then, the second factor now slightly favors exercising jurisdiction.

### 2

The Court now turns to its assessment of the first and second subfactors of the fourth *Flowers* factor: (1) whether the underlying factual issues are important to an informed resolution of the case; and (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court. Much of State Farm's argument on this point is the same as what it has been throughout its Motion to Reconsider: the facts necessary to determine this case are much less complicated than the Court originally thought. [R. 14 at 14-16.] The first subfactor "focuses on whether the state court's resolution of the factual issues in the case is necessary for

the district court's resolution of the declaratory judgment action." *Flowers*, 513 F.3d at 560. The Court's initial decision was motivated by caution – caution about the importance of factual determinations and caution about application of Kentucky's law and public policy preferences to those factual determinations. [R. 13 at 7-8.] It thus found the first subfactor to be neutral. *Id*. at 7. As State Farm points out, and as this Court has now made clear above, this caution was unwarranted. Factual issues related to Westmoreland's tort liabilities may remain to be resolved in the underlying action, but there is likely no further need to develop the facts as to State Farm's duties to Westmoreland under the renter's policy. The "state court's resolution of [] factual issues" is therefore unnecessary to this Court's determination of the declaratory judgment action. The first subfactor therefore shifts to weigh in favor of exercising jurisdiction.

Turning to the second subfactor, the Court originally noted that "[s]tate courts are generally better suited to resolve novel questions of state law" and "doubt[ed] that it is better positioned than the state court to resolve the coverage issue." [R. 13 at 8 (citing *Flowers*, 513 F.3d at 560).] When the Court first looked at the facts, the issues presented in the case seemed more complicated and potentially likely to present "novel question of state law." As the situation now stands, no novel questions of state law seem likely to be presented. When state law is clear and when there are "no unresolved factual issues relevant to the coverage question pending in the state-court action," this factor is generally neutral as to jurisdiction. *Cole's Place, Inc.*, 936 F.3d at 401.

In sum, this Court originally determined that the fourth *Flowers* factor weighed against exercising jurisdiction because one subfactor was neutral as to exercising jurisdiction (the first) and the other two subfactors supported declining jurisdiction. [R. 13 at 7-9.] Reweighing the reconsidered subfactors, one has shifted in favor of exercising jurisdiction, one has shifted to

neutrality, and the last remains against exercising jurisdiction. The Fourth *Flowers* factor is therefore better seen as being neutral as to jurisdiction rather than weighing against it.

### III

The exercise of jurisdiction under the Declaratory Judgment Act is not mandatory. *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942). Indeed, the Court possesses "unique and substantial" discretion. *Flowers*, 513 F.3d at 563. However, as the Court's view on the *Flowers* factors has shifted, so must its conclusion. While alternate remedies are available to State Farm in state court, the balance of factors weighs in favor of this Court exercising jurisdiction, with three now in favor and only two against or neutral. To do otherwise would vitiate State Farm's rights under the Declaratory Judgment Act. Furthermore, resolving this action will provide clarity for the parties on the insurance issue moving forward. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Plaintiff State Farm's Motion to Alter Judgment [**R. 14**] is **GRANTED**;

2. Defendant Zupancic's Motion to Dismiss **[R. 5]** is **DENIED**;

3. Plaintiff State Farm is given leave to refile its Motion for Declaratory Judgment [R. 8], which this Court's initial decision mooted, within **thirty (30)** days of the entry of this order, should they wish to do so. Responses and replies shall follow the ordinary filing deadlines found in LR 7.1; and

4. This matter is **RETURNED** to the Court's active docket.

This the 4th day of March 2025.



Gregory F. Van Tatenhove
United States District Judge