UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

STATE FARM FIRE AND CASUALTY COMPANY, )
)
)
Plaintiff, )
)
v. )
)
LOGAN R. WESTMORELAND and )
JOSEPH E. ZUPANCIC, )
)
Defendants. )

Case No. 5:23-cv-00081-GFVT

**MEMORANDUM OPINION
&
ORDER**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Plaintiff State Farm Fire and Casualty Company's Motion for Declaratory Judgment and Summary Judgment. [R. 21.] For the reasons that follow, State Farm's motion will be **GRANTED**. The Court finds that State Farm has no duty to provide Defendant Westmoreland with a defense in the Fayette Circuit Court action brought against him by Defendant Zupancic.

**I**

This action is ancillary to a case currently pending in Fayette Circuit Court. The relevant facts are as follows. In the summer of 2020, Joseph Zupancic was enjoying a night out with some friends in downtown Lexington. [*See* R. 1; R. 5-6.] At one point during that night, Mr. Zupancic became involved in an altercation with a group of young men, which included Logan Westmoreland. [*See* R. 1; R. 5-6.] The altercation resulted in Mr. Zupancic suffering serious bodily injuries at the hands of Mr. Westmoreland. [*See* R. 1; R. 5-6.] Mr. Westmoreland was arrested and charged with assault in the second degree, but maintained that he was acting in self-defense. [*See* R. 1; R. 5-6.] Eventually, Mr. Westmoreland pled guilty to assault in the fourth

degree.  [*See* R. 1; R. 5-6.]

A year later, in July 2021, Mr. Zupancic filed a state civil action against Mr. Westmoreland and one other defendant.  [R. 1.]  Mr. Zupancic's state court action seeks compensatory and punitive damages for his bodily injuries suffered in 2020.  [R. 1-2.]  At the time of the assault, State Farm insured Mr. Westmoreland under a renter's policy, which provides liability coverage for bodily injury claims, subject of course to terms and conditions.  [R. 1.]  Based on this policy, State Farm has thus far provided a defense for Mr. Westmoreland in the ancillary state civil action against him.  *Id*.  Now, however, State Farm questions whether it has a duty to defend and indemnify Mr. Westmoreland for the allegations against him.  *Id*.  Accordingly, State Farm filed this current action in federal court seeking a declaratory judgment and a declaration of rights as to its duties to defend and indemnify Mr. Westmoreland in his defense against Mr. Zupancic's civil action.  *Id*.

Mr. Zupancic moved to dismiss State Farm's declaratory judgment action, evincing doubt that this Court should exercise jurisdiction over this matter.  [R. 5.]  Initially, the Court agreed with Mr. Zupancic, determining that exercising jurisdiction under the Declaratory Judgment Act would be inappropriate after assessing the five factors laid out in *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008).  [R. 13.]  The Court initially determined that complicated and unresolved factual issues underlie this case, leading several of the factors to weigh against exercising jurisdiction.  *Id*.  Subsequently, State Farm moved to alter the Court's prior judgment, contending that the Court made clear errors of law when it assessed the various factors.  [R. 14.]  The Court ultimately agreed with State Farm that this action is properly subject to declaratory judgment.  *Id.*  The Court concluded that the balance of factors weighed in favor of this Court exercising jurisdiction and gave State Farm leave to refile its Motion for Declaratory Judgment

which it did on March 19, 2025.  [R. 21.]  Mr. Zupancic filed a response on April 8, 2025 [R. 22] and State Farm filed its reply on April 22, 2025, making this matter ripe for review.  [R. 23.] Having resolved the threshold question of whether it is appropriate for this Court to exercise its declaratory judgment jurisdiction in a previous Order [*See* R. 20], the Court turns now to the merits of the Motion for Declaratory Judgment and Summary Judgment.

## II

State Farm seeks summary judgment in this declaratory judgment action.  [R. 21.]  That this case is a declaratory judgment action does not alter the generally applicable summary judgment standard.  *See e.g. Bituminous Cas. Corp. v. J&L Lumber Co., Inc.*, 373 F.3d 807 (6th Cir. 2004).  Under Rule 56, summary judgment is appropriate where the pleadings, discovery materials, and other documents in the record show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-35 (1986).  "A genuine dispute exists on a material fact, and thus summary judgment is improper if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'"  *Olinger v. Corp. of the Pres. Of the Church*, 521 F.Supp.2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).  The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325.  Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating there is a genuine factual issue in dispute.  *Hall Holding*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S.

at 324).

The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). In doing so, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001). Summary judgment is inappropriate where there is a genuine conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe." *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013). Kentucky Courts have noted that "the interpretation of an insurance policy often presents a pure question of law, rendering it appropriate for summary judgment." *Holzknecht v. Ky. Farm. Bureau Mut. Ins. Co.*, 320 S.W.3d 115, 118 (Ky. App. 2010).

## A

"In a diversity action involving an insurance contract, a federal court applies the substantive law of the forum state." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 563 (6th Cir. 2008) (quoting *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000). Thus, Kentucky law will apply to the interpretation of the instant insurance policy. This Court's own published opinions interpreting Kentucky law are also applicable unless Kentucky law "has measurably changed in the meantime." *Rutherford v. Columbia Gas*, 575 F.3d 616, 619 (6th Cir. 2009). Kentucky public policy with respect to insurance contracts dictates that "the contract should be liberally construed and any doubts resolved in favor of the insured." *Dowell v. Safe Auto Ins. Co.*, 208 S.W.3d 872, 878 (Ky. 2006). Exceptions and exclusions are also to be strictly construed to make insurance effective. *K.M.R. v. Foremost Ins. Group*, 171 S.W.3d 751, 753

(Ky. App. 2005). However, Kentucky courts have recognized that "a liberal interpretation is not synonymous with a strained one" and "insurance policies must receive a sensible construction." *K.M.R.*, 171 S.W.3d at 753; *Simpsonville Wrecker Serv. Inc. v. Empire Fire & Marine Ins. Co.*, 793 S.W.2d 825, 829 (Ky. App 1989). Additionally, "the rule of strict construction against an insurance company certainly does not mean that every doubt must be resolved against it and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with the parties' object and intent or narrowly expressed in the plain meaning and/or language of the contract." *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223,227 (Ky. 1994).

Under these general principles, when a policy is subject to more than one reasonable interpretation, the ambiguity should be resolved in favor of the insured to maximize coverage. *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003). However, "only actual ambiguities, not fanciful ones, will trigger application of [this] doctrine." *Id.* Where the terms of the policy are clear and unambiguous, they must be enforced as drafted. *Osborne v. Unigard Indem. Co.*, 719 S.W.2d 737 (Ky. App. 1986). Additionally, "[w]hen no ambiguity exists in the contract, the court looks only as far as the four corners of the document to determine the parties' intent. *Abney v. Nationwide Mut. Inc. Co.*,215 S.W.3d 299, 703 (Ky. 2006). Although the parties' intent when they entered into the contract can be illuminative, in interpreting an insurance contact "terms of a policy will be given their plain and ordinary meaning." *City of Louisville v. McDonald*, 819 S.W.2d 319 (Ky. App. 1991). With these general principles of insurance contract interpretation in mind, the Court turns its attention to the relevant policy language in the present case.

**B**

The threshold inquiry is whether State Farm's Renters Policy grants liability coverage for

the claims against Westmoreland. This requires a determination of whether the claimed damages were caused by a covered "occurrence" under the Policy. Beginning with the language of the Policy, State Farm's Renters Policy grants personal liability coverage for a claim or suit "brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence. . ." [R. 21-1 at 90.] The Policy defines "occurrence" to mean "an accident, including accidental exposure to conditions which first results in: bodily injury or property damage during the policy period." *Id.* at 75. State Farm contends that Mr. Westmoreland's conduct was not a covered occurrence because it was not "accidental" (i.e. there is no evidence that Mr. Westmoreland was not in control of his actions when he struck Mr. Zupancic). [R. 21-2 at 13.] As the movant, State Farm must show that there is no material factual dispute over whether Mr. Westmoreland's conduct was accidental.

The Supreme Court of Kentucky has stated that the terms "occurrence" and "accident" are not vague and should be given their ordinary meaning. *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 73-73 (Ky. 2010). The court noted that the term "accident" infers a level of fortuity which encompasses intent and control. *Id.* at 74. That is, that the conduct was "not intended" and without "foresight or expectation." *Id.* at 76. "Where either intent or control is present, the event is not an accident." *Liberty Mut. Ins. Co. v. Harris*, 2011 WL 1157745, at *10 (W.D. Ky. Mar. 28, 2011), *aff'd* 513 F.App'x 563 (6th Cir. 2013). Additionally, Kentucky Courts have distilled this analysis, stating "[i]f the insured did not intend the event or result to occur, and the event or result that occurred was a chance event beyond the control of the insured, then. . .coverage covering accidents will apply to the benefit of the insured." *Martin/Elias Properties, LLC v. Acuity*, 544 S.W.3d 639, 643 (Ky. 2018). Thus, whether Mr. Westmoreland is entitled to coverage does not depend on Mr. Westmoreland's intent to cause any particular

6

injury, but rather, whether Mr. Westmoreland had either the intent to or control over striking Mr. Zupancic.

Mr. Zupancic does not contend that Mr. Westmoreland's conduct was outside of his control, which on its own precludes a finding that his conduct was an "accident." Additionally, Mr. Zupancic concedes that Mr. Westmoreland's conduct was intentional by stating in his Response "[o]n its face, this would appear to exclude coverage for Mr. Westmoreland as he has admitted any injuries he may have inflicted on Mr. Zupancic resulted from intentional acts." [R. 22 at 6.]  Despite this concession, Mr. Zupancic seeks to find coverage by contending that Mr. Westmoreland's conduct was not within the criminal acts exclusion and thus should be covered. *Id.* But this argument conflates fundamental insurance law principles.

Exclusions and exceptions in insurance policies do not add coverage where none was present to begin with. Exclusions lay out scenarios where coverage would have been present under the general policy language but are not covered under that policy in specific circumstances. Then, exceptions to exclusions restore coverage in taken away by the exclusion, but not over and above the coverage that was present from the outset. If there is no coverage to start with, there is no exception to any exclusion that can remedy that. The fact that the conduct may or may not fall within an exception to an exclusion is irrelevant to the question of whether the policy extends coverage to the asserted claim in the first place.

Here, the parties agree that Mr. Westmoreland's conduct was intentional, in the sense that he was in control of his movements and intended to strike Mr. Zupancic.  Mr. Zupancic strings together language in the State Farm Renters Policy and attempts to conclude that the Policy "will extend coverage to **intentional acts** by the insured causing bodily injury to a person if such acts are the result of the insured using reasonable force 'to protect persons or property." [R. 22 at 6.]

(emphasis added).  But this misses the mark.  As discussed above, intentional acts do not fall within the definition of "occurrence" or "accident" as those terms generally accepted among Kentucky Courts and as they are generally understood.  Mr. Westmoreland's claim of self-defense, while undoubtedly important to his underlying tort claim, has no bearing on whether his conduct was "fortuitous," as is required to be considered an "accident" and thus a "covered occurrence."

Other courts considering this issue have repeatedly reached the same conclusion. *See State Farm Fire & Cas. Co. v. Taylor*, 2018 WL 3594973 (E.D. Ky. July 26, 2018); *see also Coleman v. State Farm Fire & Cas.*, 2016 WL 4256903 (Ky. Ct. App. Aug. 12, 2016) (insured acting in self-defense did not preclude finding of no liability coverage based on intentional act of insured).  In *Taylor*, the Court considered a similar claim of a fight involving self-defense and explained that "it is 'clear from a policy interpretation and common sense viewpoint' that, usually, 'a fight is not an accident.'" *Taylor*, 2018 WL 3594973 at *9 (quoting *Liberty Mut. Fire Ins. Co. v. Harris*, WL 1157745 at * 4 (W.D. Ky. Mar. 28, 2011), *aff'd*, 513 F. App'x 563 (6th Cir. 2013)). This Court agrees, and Mr. Zupancic has not presented any evidence to the contrary.

Accordingly, the Court finds that State Farm, as the moving party, has demonstrated an absence of any material fact in dispute on the issue of initial coverage because Mr. Westmoreland's conduct was not accidental and thus not a covered occurrence. Mr. Zupancic, as the non-moving party, has failed to come forward with specific facts demonstrating there is a genuine factual dispute, and even admits that Mr. Westmoreland's conduct was not accidental. Therefore, the Court finds that Mr. Westmoreland's conduct is not a covered occurrence under State Farm's Renters Policy and State Farm is not required to provide him with a defense or indemnify him for the claims asserted against him by Mr. Zupancic in Fayette Circuit Court.

**C**

While the Court is satisfied that this Motion can be resolved on the coverage issue alone, it will also address whether the criminal acts exclusion would take away coverage, if it were present. State Farm's Renters Policy contains an exclusion that provides that liability and medical payments coverage does not apply to "bodily injury or property damage that: (1) was a result of a: (a) willful and malicious or (b) criminal; act or omission of the insured."[1]  [R. 21-1 at 91.]  Mr. Zupancic argues that "criminal act" is an ambiguous term under the Policy and thus should be interpreted to extend coverage to Mr. Westmoreland.  [R. 22 at 7.]  State Farm, on the other hand, asserts that under the circumstances of this case, "criminal act" is not ambiguous, and the criminal acts exclusion is an independent avenue to foreclose coverage for Mr. Westmoreland's conduct.

Considering a denial of coverage based on a similar criminal acts exclusion, the Sixth Circuit stated that "[a] plain and ordinary reading of these provisions indicates that, if an insured commits a criminal act, then he will be excluded from coverage."  *Atl. Specialty Ins. Co. v. Stanley*, 2019 WL 4440402, at *3 (6th Cir. Aug. 23, 2019).  The *Stanley* Court noted that these provisions are "ambiguous only when 'applied to particular acts that [are] not quintessentially criminal.'"  *Id.*  (citing *Auto Club. Prop.-Cas. Ins. Co. v. B.T. ex rel. Thomas*, 596 F. App'x 409, 413 (6th Cir. 2015)). For acts that are not "quintessentially criminal," the Courts apply a 'reasonable expectations' test which asks whether the insured reasonably expected his conduct to fall under his insurance coverage. *Wolford v. Wolford*, 662 S.W.2d 835, 838 (Ky. 1984).

---

[1] Defendant devotes a portion of his Response to discussing a clause in this Section of the Renters Policy which provides that subsections (2) and (3) do not apply to bodily injury or property damage resulting from the use of reasonable force to protect persons or property. The applicability of this clause cannot be determined as a matter of law because whether Westmoreland was using reasonable force to protect persons or property is a material fact in dispute. However, the applicability of subsections (2) and (3) are not relevant to the analysis of the criminal acts exclusion because subsection (1) on its own precludes coverage.

Mr. Zupancic cites three relevant authorities to support his position that Mr. Westmoreland's conduct was not "quintessentially criminal" and therefore, the criminal acts exclusion in State Farm's Renters Policy is ambiguous. [*See* R. 22 at 7-10.]  The first is *American Family Life Assur. Co. v. Bilyeau*, in which the Sixth Circuit applied Kentucky law to hold a criminal acts exclusion ambiguous where the insured was killed when the car he was driving struck a tree.  921 F.2d 87, 90 (6th Cir. 1990).  The insured had a blood alcohol concentration of .20 when his car struck the tree, and the insurer argued that this precluded coverage under its policy which excluded injuries or death that occurred "during the commission of a crime."  *Id.* at 89.  The Court held that the term "crime" was ambiguous in the context of drunk driving because an insured is more likely to understand "crime" to mean burglary, armed robbery, murder, or the like.  *Id.*  This Court finds that this case does little to help Defendant's position.  At bottom, the *American Family* case stands for the proposition that drunk driving is not "quintessentially criminal," and burglary, armed robbery, and murder are.  *Id.*  Westmoreland pled guilty to assault in the fourth degree, which is not discussed in this case.  The Court takes the Defendant's point that the court in *American Family* viewed the policy terms through the lens of what the insured would have contemplated when reading the policy.  *Id.*  However, the policy language and conduct are both distinguishable from Mr. Westmoreland's.

Mr. Zupancic next cites *Healthwise of Kentucky v. Anglin*, which addressed whether a health insurer was obligated to provide medical benefits for injuries sustained while the insured was drag racing and intoxicated.  956 S.W.2d 213 (Ky. 1997).  Although the policy contained an exclusion for losses incurred "while committing or attempting to commit a crime," the court found this provision ambiguous because the insurer and insured had presented different definitions of "crime," and under Kentucky insurance precedent, the definition more favorable to

10

the insured was adopted.  *Id.* at 216.  The definition put forth by the insured, from the Kentucky Penal Code, provided that a "crime" is a "misdemeanor or a felony" and further defined "misdemeanor" and "an offense, other than a traffic infraction, for which a sentence to a term of imprisonment of not more than twelve (12) months can be imposed."  *Id.*  All of the crimes the insurer sought to base the exclusion on—drag racing and driving under the influence, namely— were contained in the traffic regulation chapters of the Kentucky criminal statutes and thus were not "crimes" under the insured's definition from the Kentucky Penal Code.  *Id.*

Here, Mr. Zupancic has not provided a definition of "criminal" or "crime" which would support his position that assault is not "quintessentially criminal."  Mr. Zupancic asserts that in *Healthwise*, the word "crime" was ambiguous because it "was not defined in the policy and was susceptible to more than one interpretation."  [R. 22 at 9.]  While that is true on a rudimentary level, these 'competing interpretations' were not just definitions that the parties made up, they came from the *Black's Law Dictionary* and the Kentucky Penal Code—both of which define "crime" to include assault in the fourth degree, for what it is worth.

Turning to the final case cited by Mr. Zupancic, in *Auto Club Prop.-Cas Ins. Co. v. B.T. ex rel. Thomas*, the Sixth Circuit found a criminal acts exclusion ambiguous as applied to an insured who purchased and used fireworks without a license.  596 Fed. Appx. 409 (6th Cir. 2015).  The Court determined that the criminal acts exclusion was ambiguous because the possession of fireworks without a license is not "quintessentially criminal."  *Id.* at 413.  The Court reached this conclusion by applying the standards in both *Healthwise* and *American Family*, concluding that if "crime" or "criminal act" is ambiguous when applied to drag racing and drunk driving, "then it is also ambiguous when applied to possessing and igniting fireworks without a license." *Id.*  The Court noted that possessing and igniting fireworks is "far from [a]

core criminal offense" such as burglary, armed robbery, and murder. *Id.* at 414. However, the Court cautioned that burglary, armed robbery, and murder are not the only "quintessentially criminal" acts. *Id.* Thus, the question remains whether assault is "quintessentially criminal."

The Court finds *Eberle v. Nationwide Mut. Ins. Co*. illuminative. 2016 WL 2609311 (Ky. App. May 6, 2016). In *Eberle*, an insured was charged with assault in the first degree, wanton endangerment, and tampering with physical evidence. *Id.* at *1. The insured entered an *Alford* plea, and the insurer brought a declaratory rights action to determine the insured's coverage under his homeowner's policy. *Id.* at *2. The court in *Eberle* found "no reason to depart from *Healthwise's* definition of a crime," meaning that offenses which are a felony or misdemeanor under Kentucky's Penal Code are "criminal" for purposes of the criminal acts exclusion, as opposed to "violations" for which the typical penalty is only a fine. *Id.* at *4. The court even noted that a straight guilty plea, as opposed to an *Alford* plea, would make this an "easy question" because the defendant necessarily admits the underlying facts required to establish his guilt when he enters a straight guilty plea. *Id.* at *6. Thus, Mr. Westmoreland, by entering a straight guilty plea to assault in the fourth degree, necessarily admitted to "intentionally or wantonly caus[ing] physical injury to another person." K.R.S. 508.030(1)(a).

Mr. Zupancic posits that Mr. Westmoreland's conduct was not "quintessentially criminal" because he claims he acted in self-defense. [R. 22 at 10.] Just as the self-defense claim was not relevant to the issue of initial coverage, it also has no bearing on whether Mr. Westmoreland's conduct was "quintessentially criminal." The self-defense claim may have been relevant to Mr. Westmoreland's 'reasonable expectations' of coverage, but the Court need not reach that inquiry because it finds Mr. Westmoreland's conduct "quintessentially criminal," rendering the criminal acts exclusion unambiguous. Thus, the insured is not entitled to have this

12

provision read in favor of coverage because there is no ambiguity to resolve in his favor.

Kentucky requires exclusions in insurance policies should be narrowly construed as to effectuate insurance coverage. *Aetna Cas. & Sur. Co. v. Com.*, 179 S.W.3d 830, 837 (Ky. 2005). This does not mean, however, that "every doubt must be resolved against an insurance company, nor does it change the mandate that the policy must receive a reasonable interpretation consistent with the parties' expression in the language of the contract." *Pryor v. Colony Ins.,* 414 S.W.3d 424, 430 (Ky. App. 2013).

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** Plaintiff State Farm's Motion for Declaratory Judgment and Summary Judgment **[R. 21]** is **GRANTED.** State Farm is not required to provide Defendant Westmoreland with a defense or indemnify him against Defendant Zupancic's pending claims against him in Fayette Circuit Court.

This the 20th day of October, 2025.

Gregory F. Van Tatenhove
United States District Judge